# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Southern Division)

ROBERT W. LUDWIG, JR.                          )
7523 Hampden Lane                              )
Bethesda, MD 20814                             )
                                               )
          Plaintiff                            )
                                               )
vs.                                            )          Civil Action No.: 10-2025
                                               )
PROSPERITY MORTGAGE COMPANY                    )
4440 Brookfield Corporate Drive                )
Chantilly, VA 20151                            )
          SERVE ON:                            )
          Walker Jackson Mortgage Corporation  )
          c/o National Registered Agents, Inc. of MD )
          836 Park Avenue, 2d Floor            )
          Baltimore, MD 21201                  )
                                               )
WELLS FARGO BANK, N.A.                          )
464 California Street                          )
San Francisco, CA 94104                       )
          SERVE ON:                            )
          CSC-Lawyers Incorporating Service    )
          P.O. Box 526036                      )
          Sacramento, CA 95852                 )
                                               )
WELLS FARGO VENTURES, LLC                      )
1 Home Campus                                  )
MAC x2401-06T                                  )
Des Moines, Iowa 50328-0001                    )
          SERVE ON:                            )
          CSC-Lawyers Incorporating Service    )
          7 St. Paul Street, Ste. 1660         )
          Baltimore, MD 21202                  )
                                               )
LONG & FOSTER REAL ESTATE, INC.                )
11351 Random Hills Road                        )
Fairfax, Virginia 22030                        )
          SERVE ON:                            )
          National Registered Agents, Inc. of MD )
          836 Park Avenue, 2d Floor            )
          Baltimore, MD 21201                  )
                                               )
WALKER JACKSON MORTGAGE                        )
CORPORATION f/d/b/a PROSPERITY                  )
MORTGAGE CORPORATION                           )

11351 Random Hills Road                    )
Fairfax, VA 22030                          )
    SERVE ON:          )
    National Registered Agents, Inc. of MD    )
    836 Park Avenue, 2d Floor    )
    Baltimore, MD 21201        )
                               )
P. WESLEY FOSTER, JR.                      )
3918 Prosperity Avenue                     )
Fairfax, VA 22031                          )
                               )
BRADLEY J. ROZANSKY                        )
7312 Arrowhead Road                        )
Bethesda, MD 20817                         )
                               )
PARAGON TITLE & ESCROW COMPANY             )
7415 Arlington Road                        )
Bethesda, MD 20814                         )
    SERVE ON:                  )
    Sheryl B. Rothstein        )
    9201 Mistwood Drive        )
    Potomac, MD 20854          )
                               )
RANDALL M. ROTHSTEIN                       )
9201 Mistwood Drive                        )
Potomac, MD 20854                          )
                               )
and                                        )
                               )
JOHN DOES 1-50                             )
                               )
      Defendants.      )

## COMPLAINT

    This Complaint is brought by Robert W. Ludwig, Jr., by counsel, against Prosperity Mortgage Company ("Prosperity Mortgage"); Wells Fargo Bank, N.A.; Wells Fargo Ventures, LLC (together with Wells Fargo Bank, "Wells Fargo"); Long & Foster Real Estate, Inc. ("Long & Foster"); Walker Jackson Mortgage Corporation d/b/a Prosperity Mortgage Corporation ("Walker Jackson"); P. Wesley Foster, Jr., Bradley J. Rozansky, Paragon Title & Escrow Company ("Paragon"), and Randall M. Rothstein, for the recovery of monetary damages for fraud, conspiracy, and violations of federal and state statutes, as follows:

## I.   **INTRODUCTION**

1.     This is an action seeking relief from the practices of a national mortgage lender –
Wells Fargo – that, together with a major real estate company – Long & Foster and its
affiliate Walker Jackson –created an "Affiliated Business Arrangement" ("ABA") – Prosperity
Mortgage – which is a sham. As set forth below, the Prosperity Mortgage ABA was formed in
order to facilitate the collection of unlawful referral fees and kickbacks in violation of the Real
Estate Settlement Procedures Act of 1974, as amended, 12 U.S.C. §§ 2601. *et seq.* ("RESPA").

2.     Defendants Wells Fargo Bank and its wholly-owned subsidiary, Wells Fargo
Ventures rely heavily on real estate and mortgage brokers to obtain business. In order to
promote their mortgage loans, Wells Fargo, as described further below, encouraged and assisted
Long & Foster and Walker Jackson to set up a sham "Joint Venture" or "Partnership" as a way to
pay referral fees and kickbacks to Long & Foster at the expense of the borrower.

3.     Upon information and belief, under Defendants' scheme, Wells Fargo solicited
mortgage origination work from Long & Foster promising that Long & Foster could make
additional money for each loan application referred without performing any additional work.
Wells Fargo, together with Long & Foster and Walker Jackson, then set up an affiliated business
arrangement – Prosperity Mortgage – that was established to appear on closing documents as a
mortgage lender. Prosperity Mortgage is a "joint venture" or partnership in which both Wells
Fargo and Long & Foster have an interest.

4.     Once the affiliated business arrangement was created, it appeared on the
settlement documents as an entity that had performed *bona fide* and substantial mortgage loan
origination services. This, however, was false and untrue. Even though the affiliated business
arrangement charged and was paid substantial fees by the borrower that ranged from $100 -

$2,500, or more, for each mortgage loan originated, Prosperity Mortgage, in fact, performed little or no work in connection with the mortgage transactions. Moreover, following the settlement, the fees – which were *in addition to* the customary and usual fees that Wells Fargo charged for mortgage origination – or other consideration attributable to the affiliated business arrangements, were split with and paid to Long & Foster and/or Walker Jackson. The fees or other consideration were received or paid to Long & Foster and/or Walker Jackson without disclosing to the borrower that the consideration was to reward Long & Foster and Walker Jackson for the referral of the mortgage loan to Wells Fargo Bank.

5. In so doing, Long & Foster, Walker Jackson and Wells Fargo were able to systematically and deceptively hide and conceal the fact that Prosperity Mortgage is a sham "Affiliated Business Arrangement" and served no purpose in the transaction other than to: (1) permit Long & Foster and Walker Jackson to pocket additional monies, paid by the borrower, while providing no additional goods or services; and (2) facilitate the payment of a referral fee and kickback, sponsored by Wells Fargo, at the increased expense of the borrower and in violation of the borrower's rights under state and federal law.

6. Unaware that Prosperity Mortgage was a sham and not a *bona fide* lender, the Plaintiff was deceived by the defendants as to his true mortgage lender, was induced to sign loan documents that had been deliberately falsified to identify Prosperity Mortgage as lender, was induced to pay referral fees/kickbacks that had been deliberately disguised as legitimate charges, and was induced to sign collateral documents that had been deliberately falsified to identify Prosperity Mortgage as lender, which were then filed in the of the land records in Montgomery County, Maryland to register a false security interest against his property.

## II.   PARTIES

### a.   The Plaintiff

7.      Plaintiff, Robert W. Ludwig, Jr. is a resident of Montgomery County, Maryland. Plaintiff purchased his property at 7523 Hampden Lane, Bethesda, MD 20814, on or about November 5, 2003 using Bradley J. Rozansky and Long & Foster as his real estate broker.

8.      Plaintiff took out a mortgage loan – the primary mortgage – for $760,000.00, and the operative papers identify Prosperity Mortgage as the lender for that mortgage loan.

9.      As part of the same transaction, Plaintiff also took out a home equity line of credit – the secondary mortgage loan – for $275,000.00, and the operative papers identify Wells Fargo Bank, N.A. as the lender for that mortgage loan.

10.     In connection with the origination of his $760,000.00 mortgage loan, Plaintiff paid approximately $1,445.00 in settlement-related charges to the sham ABA, Prosperity Mortgage, which is jointly owned by Long & Foster and Wells Fargo Ventures.

11.     In addition, upon information and belief, Prosperity Mortgage charged and collected "finder's fees" from Plaintiff for the brokering of the secondary mortgage loan. At no time, however, did Prosperity Mortgage enter into a written agreement with Plaintiff advising him that such fees would be charged and collected, as required under Maryland's Finder's Fee Act, Md. Code Ann., Com. Law §§ 12-801, *et seq.*

### b.   The Co-Conspirators

12.     Co-conspirator Prosperity Mortgage is a Minnesota General Partnership, with its principal place of business at 4440 Brookfield Corporate Drive, Chantilly, VA 20151.

13.     Prosperity Mortgage is an "affiliated business arrangement," owned in whole or in part by subsidiaries of conspirators Wells Fargo and Long & Foster. Prosperity Mortgage is

licensed to conduct business involving mortgage loans in Maryland and also other states throughout the United States including but not limited to Pennsylvania, New Jersey, Virginia, West Virginia, Delaware, North Carolina, and Washington, D.C. Upon information and belief, Prosperity Mortgage purports to originate thousands of mortgage loans each year.

14.     Prosperity Mortgage is a "sham" entity within the meaning of the RESPA regulations promulgated by the Department of Housing and Urban Development (HUD). Prosperity Mortgage was established by Wells Fargo and Long & Foster, to facilitate the payment of illegal referral fees and kickbacks by Wells Fargo to Long & Foster.

15.     Co-conspirator Wells Fargo Bank is a foreign corporation organized and existing under the laws of the State of California. It is engaged in the business of consumer lending in Maryland and elsewhere. At all times relevant, Wells Fargo Bank was a licensed mortgage lender in the State of Maryland, and has funded hundreds, if not thousands, of mortgage loans that were purportedly originated by the Prosperity Mortgage ABA.

16.     Co-conspirator Wells Fargo Ventures is a Delaware Limited Liability Company, with its principal place of business at 1 Home Campus, MAC X2401-06T, Des Moines, Iowa 50328-0001. It is a wholly-owned subsidiary of Wells Fargo Bank.

17.     Co-conspirator Long & Foster is a Virginia corporation, with its principal place of business at 11351 Random Hills Road, Fairfax, VA 22030. Long & Foster is primarily in the business of acting as a real estate broker in residential transactions. Long & Foster owns a fifty percent interest in Prosperity Mortgage through Walker Jackson, Long & Foster's wholly-owned subsidiary.

18.     Co-conspirator Walker Jackson, which is formerly known as Prosperity Mortgage Corporation, is a Virginia corporation, with its principal place of business at 11351 Random

Hills Road, Fairfax, VA 22030. Walker Jackson is solely owned and operated by Long & Foster.

19.     Co-conspirator Wesley Foster, upon information and belief, is a resident of Fairfax County, Virginia. Mr. Foster is the founder, chairman, and Chief Executive Officer of Long & Foster and the namesake of the company.

20.     Upon information and belief, Mr. Foster directed or authorized the participation of Long & Foster and/or Walker Jackson in the sham "Joint Venture" or "Partnership" with Wells Fargo as a way to pay referral fees and kickbacks to Long & Foster at the expense of the borrower, directed or authorized the referral of hundreds or thousands of borrowers including Plaintiff to Prosperity Mortgage, and was aware of, condoned and thus participated in the creation of false loan documentation, collateral and land record filings for those borrowers including Plaintiff.

21.     Co-conspirator Bradley Rozansky is a resident of Montgomery County, Maryland. Mr. Rozansky was Plaintiff's real estate agent at Long & Foster, who referred Plaintiff to Prosperity Mortgage for financing the purchase of his property, and to Paragon Title for conducting the settlement on his property purchase and closing of mortgage loans, which Mr. Rozansky attended. Upon information and belief, he has referred hundreds of borrowers to Prosperity Mortgage for financing, and to Paragon Title for settlements and closings.

22.     Co-conspirator Paragon Title is a Maryland corporation, with its principal place of business at 7415 Arlington Road, Bethesda, Maryland.   Paragon Title provided the real estate settlement, escrow, and land record filing services in connection with the settlement and closing on Plaintiff's property and mortgage loans.

23.     Co-conspirator Randall Rothstein is a resident of Montgomery County, Maryland.  Mr. Rothstein is a Maryland attorney who is President of Paragon Title, and the principal partner in Rothstein & Associates, P.A., its general counsel.  Mr. Rothstein conducted the settlement on Plaintiff's property purchase and closing of his mortgage loans, and prepared and filed the operative collateral against Plaintiff's property in the land records of Montgomery County, Maryland. Upon information and belief, Mr. Rothstein has accepted hundreds of referrals from Long & Foster for closings on Prosperity Mortgage loans, and filed similar collateral in the county land records.

## III. JURISDICTION AND VENUE

24.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

25.     Venue is proper in this District under 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to claims herein occurred within this District and the conspirators all systematically and continually transact business in this District.

## IV. FACTS APPLICABLE TO ALL COUNTS

### a       Wells Fargo and Long & Foster Form the ABA

26.     At all times relevant, Wells Fargo Bank has been a mortgage lender and a provider of "settlement services" as that term is used in RESPA, 12 U.S.C. § 2602.

27.     Wells Fargo Bank obtains its business both from individuals and from referrals by real estate companies, mortgage brokers and developers.

28.     Long & Foster is a real estate broker, licensed under the laws of various states including Maryland.

29.     Walker Jackson is an affiliate of Long & Foster.

30.     It is the standard and typical practice of realtors to assist their customers in selecting a mortgage lender to assist in financing the acquisition of a home. Accordingly, at all times relevant to this Complaint, Wells Fargo Bank had in place a marketing program designed to solicit business from real estate brokers, including Long & Foster.

31.     Upon information and belief, as part of its communications with real estate brokers and others, in this regard, Wells Fargo has encouraged these potential customers such as Long & Foster to enter into "partnerships" with it. On information and belief, these "partnerships" or "affiliated" arrangements – which are regulated under rules promulgated to deal with sham arrangements under RESPA – were designed to encourage the referral of mortgage loan business to Wells Fargo Bank while permitting the real estate brokers and others to make additional monies out of each transaction through the referral of business to Wells Fargo Bank.

32.     Towards this end, in or about 1993, Wells Fargo (through its wholly-owned subsidiary Wells Fargo Ventures) and Long & Foster and/or its affiliate Walker Jackson formed the ABA Prosperity Mortgage.

33.     Prosperity Mortgage held and holds itself out in the community as a "mortgage lender" and is identified as such on the loan papers of consumers. This is a false and deceptive statement. Prosperity Mortgage is not a mortgage lender – it does not loan money to consumers; nor does it maintain a warehouse line of credit from which it can loan funds to consumers or anyone else; nor, upon information and belief, does Prosperity Mortgage conduct underwriting for mortgage loans.

34.     Instead, Prosperity Mortgage is merely a conduit through which Wells Fargo Bank receives referrals of mortgage loan business from Long & Foster. In return, Long & Foster receives a fee and/or kickback for each loan referred, even though such an arrangement violates RESPA and other federal laws.

35.     Even though Prosperity Mortgage holds itself out to the public as a *bona fide* lender, Prosperity Mortgage, in fact, merely facilitates the referral of the mortgage business to Wells Fargo Bank, which funds virtually all Prosperity Mortgage transactions.

**36.**     Upon information and belief, 90-95% of all Prosperity Mortgage originated loans are underwritten and funded by Wells Fargo Bank. The remainder of the loans are so-called non-conforming mortgage loans that are funded by sub-prime lenders.

### b.  The Co-Conspirators Ran Mortgage Referral Business Through the Sham ABA Prosperity Mortgage

37.     Upon information and belief, from the beginning of Prosperity Mortgage's operations until the present, Wells Fargo and Long & Foster have used a uniform and consistent protocol for each Prosperity Mortgage transaction.

38.     First, Long & Foster arranges for consumers who have used its real estate agents' services to contract for the purchase of a home, to "take out a loan" from Prosperity Mortgage.

39.     Prosperity Mortgage's loan officers work out of each Long & Foster office located in Maryland and elsewhere.

40.     Once the consumer agrees to "take out a loan," a "loan officer" or "mortgage specialist" from Prosperity Mortgage takes a loan application from the consumer over the telephone under the premise that Prosperity Mortgage needs to determine whether it (Prosperity Mortgage) can underwrite and fund a mortgage loan.

41.     At all times, however, the Defendants know and/or knew that Prosperity Mortgage would not be the actual lender in the consumer's transaction. Rather, the Defendants know and/or knew at all times that Prosperity Mortgage has no funds of its own to lend and that for virtually all of the loan applications taken by Prosperity Mortgage, Wells Fargo Bank is or was the true lender.

42.     Upon information and belief, Wells Fargo Bank conducts the underwriting for each of the mortgage loan applications taken by Prosperity Mortgage.

43.     Regardless, at no time are consumers advised that Prosperity Mortgage does not have funds to loan. Nor are consumers ever advised that Wells Fargo Bank is conducting the loan underwriting and would ultimately have to approve the mortgage loan. Nor are consumers ever told that, if approved, Wells Fargo Bank was almost certainly going to fund their loan and be their lender.

44.     The funding protocol uniformly and consistently used by Prosperity Mortgage and Wells Fargo for all loans referred by Long & Foster is called "table funding." Table funding refers to a settlement at which a loan is funded by a contemporaneous advance of loan funds and an assignment of the loan to the person advancing the funds.

45.     In fact, Prosperity Mortgage and the other Defendants took substantial steps and undertook efforts to cover-up these facts in furtherance of Defendants' scheme. For example, Prosperity Mortgage uniformly and consistently issued all of the operative loan documents – such as the mortgage (or deed of trust), note, Good Faith Estimate and HUD-1 Settlement Statement – identifying itself as the "lender," without any mention of Wells Fargo.

46.     In furtherance of the scheme, in every mortgage transaction, Prosperity Mortgage also issued, through the U.S. mails and/or by facsimile transmission, letters to consumers and

other notices advising consumers of the status of their loan application, including but not limited to standard "Pre-qualification" and "Pre-approval" letters. The purpose of each of these communications was to give consumers the impression that Prosperity Mortgage was a legitimate and substantial mortgage lender that was willing to loan funds in connection with the consumer's purchase of a home. In every case, these false communications began at the time of the borrower's first contact with Prosperity Mortgage and continued at least until the time of settlement, if not later.

47.     The communications also were intended to conceal the fact that Wells Fargo Bank was the real lender in each of the transactions and that Prosperity Mortgage was nothing more than a subterfuge for the payment of referral fees and kickbacks by Wells Fargo to Long & Foster. These communications succeeded in these respects.

48.     At each closing, because Prosperity Mortgage is not the real lender in the transaction, and in furtherance of the scheme, Prosperity Mortgage requires the borrower to sign a document assigning the "servicing" rights on the federally related mortgage loan to Wells Fargo Bank. The disclosure falsely advises the borrower that, as the "servicer," Wells Fargo "is simply the company to whom you make your monthly mortgage payments." Wells Fargo Bank, however, was the actual lender in the transaction and not merely a "servicing" company.

**c.  Despite the Representations on the HUD-1, Prosperity Mortgage Receives No Fees in Connection with the Mortgage Loans that it Originates – All Fees Attributable to Prosperity Mortgage Are Retained by Wells Fargo and then Paid Directly to Long & Foster as a Referral Fee or Kickback**

49.     In furtherance of this scheme to cheat consumers, Prosperity Mortgage is always identified as the recipient of the funds on the HUD-1 for the mortgage origination services.

50.     Regardless, and because Prosperity Mortgage is merely a conduit for the payment of referral fees and kickbacks to Long & Foster, Prosperity Mortgage does not receive any of

the fees allocable and payable to it.

51.     Wells Fargo, which disburses the funds for each mortgage loan, "net funds" each loan. That is, Wells Fargo sends all funds for disbursement to the escrow agent in connection with the loan closing, except for those funds payable on the HUD-1 to Prosperity Mortgage.

52.     Thus, by way of example, assume that a consumer purchases a house using Long & Foster as its real estate broker, and is then referred to Prosperity Mortgage for his or her mortgage loan of $100,000. If mortgage loan origination fees are $2,000 (all payable on the HUD-1 to Prosperity Mortgage), Wells Fargo does not disburse $100,000 as expected (mortgage amount). Instead, Wells Fargo "net funds" the loan and disburses $98,000 to the escrow agent (mortgage amount – fees attributable to Prosperity Mortgage).

53.     In this example, Wells Fargo retains the $2,000 in origination fees both because Prosperity Mortgage is a sham ABA, and because Wells Fargo was the entity that actually performed the mortgage loan origination services, not Prosperity Mortgage.

**d      Wells Fargo Pays Long & Foster Referral Fees and/or Kickbacks**

54.     At some point following the closing of the mortgage loans, Wells Fargo splits the origination fees with co-conspirator Long & Foster to reward Long & Foster for having referred Wells Fargo Bank the mortgage loan. The portion of the fees paid to Long & Foster constitute unearned referral fees and kickbacks. These fees were paid at the expense, and to the detriment of, borrowers in violation of federal and state law.

55.     Upon information and belief, because Wells Fargo pays a portion of the "Prosperity Mortgage" origination fees as a referral fee or kickback to Long & Foster, it inflates its usual and customary charges (including the interest rate) to consumers to make up the difference. At no time relevant to this Complaint are consumers advised that the

origination fees and/or interest rates are inflated to help fund the Wells Fargo-Long & Foster scheme.

### e.   Prosperity Mortgage is a Sham ABA

56.   An "affiliated business arrangement" is defined in section 3(7) of the Real Estate Settlement Procedures Act of 1974, as amended, 12 U.S.C. §§ 2601, *et seq.* (12 U.S.C. § 2602(7)) as:

> [A]n arrangement in which (A) a person who is in a position to refer business incident to or as part of a real estate settlement service involving a federally related mortgage loan, or an associate of such person, has either an affiliate relationship with or a direct or beneficial ownership interest of more than 1 percent in a provider of settlement services; and (B) either of such persons directly or indirectly refers such business to that provider or affirmatively influences the selection of that provider.

57.   The "affiliated business arrangement," however, must be a *bona fide* provider of settlement services and not a "sham arrangement used as a conduit for referral fee payments." *HUD Statement of Policy* 1996-2 (Sham Controlled Business Arrangements). Such a sham arrangement is illegal, violates federal law and is a deceptive or unfair trade practice under Maryland law, as set forth below.

58.   As described above, Defendant Wells Fargo, together with Long & Foster and Walker Jackson, with an intent to defraud the borrower, organized the sham entity Prosperity Mortgage.

59.   Although Prosperity Mortgage is uniformly and consistently identified on borrowers' "HUD-1 Settlement Statements" -- which are the official and standard forms used in borrower real estate transactions to identify the charges and categories of charges resulting from the mortgage loan transaction – as receiving fees for the origination of the mortgage loan, in fact, Wells Fargo, its agents or employees performs all or substantially all of the core services.

60.     Upon information and belief, Prosperity Mortgage performs little or no work and provides no services that Wells Fargo does not otherwise provide in the course of originating a mortgage loan.

61.     Upon information and belief, Prosperity Mortgage is not charged, and does not pay, interest to Wells Fargo on the table funding that it receives.

62.     Upon information and belief, the initial capitalization of Prosperity Mortgage was inadequate.

63.     Upon information and belief, Prosperity Mortgage does not have and has not had its own employees who perform the core origination services for the borrower, but utilizes "loaned employees" of Wells Fargo for this function.

64.     Upon information and belief, Prosperity Mortgage does not manage its own business affairs.

65.     Upon information and belief, consumers were not provided a proper and adequate disclosure of the affiliated relationship as required by both Maryland and Federal law.

66.     Upon information and belief, Prosperity Mortgage does not market its services competitively.

67.     Upon information and belief, Prosperity Mortgage personnel operate out of Long & Foster locations.

68.     Upon information and belief, Prosperity Mortgage does not compete in the marketplace.

69.     Upon information and belief, Prosperity Mortgage was formed solely to facilitate illegal payments and kickbacks by co-conspirator Wells Fargo, to reward Long & Foster and

Walker Jackson for having referred the mortgage origination work to Wells Fargo in the first place.

70.     Although Prosperity Mortgage does virtually nothing in respect of the mortgage loan transactions referred by Long & Foster, Prosperity Mortgage charges substantial fees to the borrower for purported goods or services rendered in connection with the mortgage loan.

71.     The unearned or excessive fees allocable or payable to Prosperity Mortgage are reflected on false and misleading HUD-1 Settlement Statements which were in all relevant respects uniform across all class members.

72.     The HUD-1 Settlement Statements ostensibly provide the borrower information relating to Prosperity Mortgage and the settlement services that Prosperity Mortgage purports to perform in respect of the mortgage loan transaction. The HUD-1 Settlement Statements are designed to give the borrower false assurances that the sham entity is providing necessary, legal and legitimate services – including, but not limited to loan origination, processing and funding – and to thus lull the borrower into a false sense of legitimacy thereby preventing the borrower from contesting or questioning the charges or range of charges by Prosperity Mortgage in connection with the mortgage loan transaction. The HUD-1 Settlement Statements also are intended to conceal from the consumer that the actual lender in the transaction is Wells Fargo, not Prosperity Mortgage. The HUD-1 Settlement Statements succeeded in these respects towards Plaintiff.

73.     The HUD-1 Settlement Statements each conceal the true nature of the relationship between the conspirators, conceal the fact of the bogus and/or excessive payments for certain of the services that would have normally been attributable to Wells Fargo and conceal the fact that the sham ABA is performing little or no services, or at the very least is

16

performing redundant services, and supplying no added value in connection with the mortgage loan transaction. The HUD- 1 Settlement Statements also conceal the fact that, as a kickback, referral or split-fee, Long & Foster and Walker Jackson are being paid an additional fee, above and beyond that already agreed to by the borrower for their services (i.e. their real estate commission), a practice which the conspirators know to be illegal and in violation of sections 8(a) and 8(b) of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2607, *et seq.*, and Maryland law, as well as being an unfair and deceptive trade practice under the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101, *et seq.*

74.    In reliance upon these false and misleading statements and omissions, Plaintiff executed the operative mortgage documents, including but not limited to the HUD-1 Settlement Statement, the Note and a Mortgage (Deed of Trust). Despite    due    diligence, Plaintiff as one of the subject borrowers received and reviewed the relevant documents (and reasonably relied on their accuracy), and was not able through the exercise of reasonable diligence to discover the true nature of the sham entity until, at the earliest, depositions were taken in July 2007 in the case of *Robinson v. Fountainhead Title Group Corp.*, No. 03-CV-03106-WMN (D. Md.), and in Plaintiff's case, until a class action notice dated February 5, 2010 of a proposed settlement, in *Brittingham, et al. v. Wells Fargo Bank, et al.*, Civ. No. 09-cv-00826-WMN (D. Md.). In the earlier proceeding, the July 25, 2007 deposition of Michael Dunn revealed the true nature of the Prosperity Mortgage scheme for the first time, though still not known generally or by the Plaintiff in the exercise of due diligence.

75.    The fees paid to the affiliated business arrangement, Prosperity Mortgage, were unearned referral fees and kickbacks and were paid at the expense and to the detriment of borrowers, in violation of state and federal law.

76.     Upon information and belief, following the settlement, the fees attributable to Prosperity Mortgage – which were *in addition to* the customary and usual fees that Wells Fargo charged, or was permitted to charge for loan origination – were split with and paid in part to Long & Foster and/or Walker Jackson. Long & Foster and Walker Jackson, with an intent to defraud, collected the fees without disclosing to the borrower that the monies were paid to reward them for referring the mortgage loan to Wells Fargo.

77.     In addition, as part of the transaction, the Plaintiff also entered into a secondary mortgage loan for $275,000.00 for which Wells Fargo Bank was identified as the lender, but the interest rate was substantially higher – two full percentage points higher than the Prosperity Mortgage loan.

**f     Long & Foster Insists that its Agents Steer Consumers to the Sham Prosperity Mortgage**

78.     Upon information and belief, precisely because Long & Foster makes an enormous profit each time that it refers mortgage business to Wells Fargo, Long & Foster regularly seeks to require consumers to use Prosperity Mortgage as their "mortgage lender."

79.     In a memorandum from P. Wesley Foster, Jr., founder, chairman, and Chief Executive Officer of Long & Foster and the namesake of the company, to all Long & Foster real estate agents, Mr. Foster emphasized:

> There is only one lender that is solely dedicated to you. ***Prosperity Mortgage*** was created and still exists today with the primary purpose of serving you. Many other Real Estate companies will not use Prosperity because they are tied to this Long & Foster name, but that's okay with me. When we started this mortgage company, we created it to serve our agents – each of you. Prosperity Mortgage is more competitive today than ever before. As a matter of fact, you have every product offered by Wells Fargo – every single product. *The only* ***DIFFERENCE IS THAT A LOAN GIVEN to Wells Fargo DOES NOT HELP our COMPANY STAY STRONG.***

Memo from P. Wesley Foster, Jr. to all Long & Foster Agents and Managers (10/31/07) (emphasis added).   Upon information and belief, this memorandum is typical of other similar communications by Mr. Foster to Long & Foster agents from the inception of Prosperity Mortgage.   Given such a mandate, Long & Foster's consumers have no real alternative to doing business with Prosperity Mortgage.

## V. FACTS APPLICABLE TO PLAINTIFF

80.     On or before September 6, 2003, Plaintiff retained Mr. Rozansky and Long & Foster as his real estate agent.   On or about November 5, 2003, Plaintiff settled on the purchase of his current home at 7523 Hampden Lane, Bethesda, MD 20814.

81.     Long & Foster and Mr. Rozansky arranged for and required Plaintiff to use Prosperity Mortgage as his lender, and Paragon Title and Mr. Rothstein as his settlement agent and closing counsel.

82.     Prior to his loan closing, Plaintiff received letters and other communications from Prosperity Mortgage, sent via the U.S. mails and/or over the wires via facsimile transmission or telephone communication, all of which represented that Prosperity Mortgage is a legitimate mortgage lender.

83.     Upon information and belief, at his loan closing, Plaintiff was not given an "Affiliated Business Arrangement Disclosure," which in any event would have been false and deceiving in several respects, including that it would have failed to disclose that: (1) Long & Foster's referral to Prosperity Mortgage was a *de facto* referral to Wells Fargo; and (2) Wells Fargo would be paying Long & Foster a referral fee and/or kickback in connection with the referral of her mortgage loan.

84.     As part of the closing services, Paragon Title and Mr. Rothstein as settlement agent and closing counsel, at the direction of Wells Fargo, delivered to Plaintiff a

19

packet of loan documents, including a false and misleading HUD-1 Settlement Statement and other loan documents and disclosures.

85.    According to Plaintiff's HUD-1 Settlement Statement, Plaintiff paid the following fees for the origination of her mortgage loan:

     (a)    $755.00 Application Fee;
     (b)    $385.00 Processing Fee;
     (c)    $100.00 Underwriting Fee;
     (d)    $135.00 Appraisal Review Fee; and
     (e)    $ 70.00 Tax Service Fee.

86.    At the closing of the loan, Wells Fargo Bank, which funded Plaintiff's loan, "net funded" the loan, withholding $1,445.00 for the fees attributable to Prosperity Mortgage.

87.    Upon information and belief, these fees were never paid to Prosperity Mortgage, but instead, pursuant to Wells Fargo and Long & Foster's regular practice, following the settlement, were split between Wells Fargo and Long & Foster.

88.    In addition, as was the regular practice in Prosperity Mortgage transactions, Plaintiff was overcharged (either in the origination fee or through his interest rates).

89.    The HUD-1 Settlement Statement, and other documents provided to Plaintiff in connection with the loan origination, were designed, in part, to give Plaintiff false assurances that Prosperity Mortgage was providing necessary, legal, and legitimate services. Moreover, these documents were designed to lull Plaintiff into a false sense of security, preventing Plaintiff from contesting or questioning the charge or range of charges by Prosperity Mortgage. The documents succeeded in this respect.

90.    The HUD-1 Settlement Statement, and other documents provided to Plaintiff in connection with the loan origination, also concealed the fact that Prosperity Mortgage was performing no services, nor adding any value to the performance of settlement, and

supplying no goods in connection with Plaintiff's mortgage loan transaction. They also concealed from Plaintiff the fact that, as a kickback, referral and/or split-fee, Defendant Long & Foster would be paid an additional fee, beyond that as portrayed by the HUD-1.

91.    Even though Prosperity Mortgage is identified on Plaintiff's HUD-1 as receiving a fee for services, upon information and belief, these substantive services were actually performed by co-conspirator Wells Fargo, its agents or employees.

92.    In connection with the activities giving rise to this action, the Defendants acted with malice, intent and knowledge, and with a wanton disregard for the rights of the named Plaintiff and other borrowers.

## VI. CIVIL RICO SUMMARY

93.    In connection with the activities giving rise to this action, the Defendants acted with malice, intent and knowledge, and with a wanton disregard for the rights of Plaintiff and other borrowers.

94.    At all relevant times herein, the "enterprise" described herein, Prosperity Mortgage, which is an entity registered with the Maryland State Department of Assessments and Taxation and formed by Defendants Long & Foster, by way of Walker Jackson, and Wells Fargo, operated separately and distinct from each other individual Defendant. Prosperity Mortgage was engaged in interstate commerce in that, *inter alia*, the mortgage loans which are the subject of the scheme to defraud set forth in this Complaint, were secured in Maryland and were funded by wire or check that originated outside of Maryland and which were serviced out-of-state by Wells Fargo from various locations around the United States.

95.    At all relevant times herein, in connection with the activities giving rise to this action, the Defendants conspired with each other to engage in the various activities set forth

herein, agreed to participate in the operation of the conspiracy and scheme to defraud Plaintiff and other mortgage loan borrowers, and aided and abetted one another in these activities, all as proscribed by federal law.

96.   As set forth herein, during the relevant times, and in furtherance of and for the purpose of executing the scheme and artifice to defraud, the Defendants on numerous occasions used and caused to be used, mail depositories of the United States Postal Service by both placing and causing to be placed mailable matters in said depositories and by removing and causing to be removed mailable matter from said depositories. These mailings included, but were not limited to, HUD-1 Settlement Statements, correspondence, other loan closing documents, and original copies of owner's and lender's title insurance policies that fraudulently misrepresented the relationship between conspirators and concealed the true nature of services provided by the sham entity.

97.   Specifically, Plaintiff received packages in the mail prior to and after his loan closing on November 5, 2003 that were purportedly sent by Prosperity Mortgage. These mailings included approval, qualification and commitment letters, Truth-In-Lending-Act Disclosures, and Good Faith Estimates and other documents from the enterprise representing that it was the lender and would be providing lending services in connection with Plaintiff's loan. These mailings attempted to and were successful in deceptively hiding the fact that Prosperity Mortgage was a sham entity that was created to launder money back into the hands of Long & Foster and Wells Fargo. Plaintiff did not and could not reasonably learn from these mailings the fact that Prosperity Mortgage was a sham entity and not operating according to law. Plaintiff did not protest the fees charged by Prosperity Mortgage in reliance on the legitimacy of the transaction and the documents mailed to him.

98.   Every month Plaintiff received a billing statement from Wells Fargo through the U.S. mails that includes the Long & Foster emblem and Plaintiff's Long & Foster real estate agent's name, Bradley Rozansky, office location, and telephone number. Wells Fargo included the Long & Foster information on each bill to make Wells Fargo's appearance, as the servicer of the loan, legitimate.

99.   Moreover, in each transaction that Wells Fargo Bank table funds for Prosperity Mortgage in furtherance of the scheme, two title insurance policies are issued by a title insurer – an owner's policy and a lender's policy. Each title insurance policy is sent through the U.S. mails after issuance.

100.   The owner's title insurance policy is issued by a title insurer in the name of the purchaser in each purchase transaction. Prosperity Mortgage and/or Wells Fargo instructs the closing agent to prepare the owner's title insurance policy by listing "Prosperity Mortgage" as the lender in the transaction in the legally binding document even though the co-conspirators know that Wells Fargo is the lender in the transaction.

101.   Upon completion, the owner's title insurance policy is sent through the U.S. mails to the purchasers, in this case, Plaintiff.

102.   The lender's title insurance policy is issued in each transaction by a title insurer. Prosperity and/or Wells Fargo instructs the closing agent to prepare the lender's title insurance policy by listing "Prosperity Mortgage" as the lender in the transaction in the legally binding document even though the co-conspirators know that Wells Fargo is the lender in the transaction.

103.    In each instance, the borrower pays for the lender's title insurance policy even though the policy only benefits the lender. Defendants cause each lender's title insurance policy to be sent through the U.S. mails in furtherance of the scheme.

104.    These mailings were not limited to the Plaintiff, but rather, were also sent through the U.S. mails to other borrowers completing a transaction with Prosperity Mortgage in an attempt to conceal the true nature of the enterprise. The co-conspirators repeated this pattern – that is, the fraudulent use of the U.S. mails and causing others to use the U.S. mails in furtherance of the scheme – in thousands of similar real estate transactions. Plaintiff like other borrowers relied on the deceptive correspondence, and title insurance policy. Each such use of the U.S. mails in connection with the scheme and artifice to defraud constituted the offense of mail fraud as proscribed and prohibited by 18 U.S.C. § 1341.

105.    As set forth herein, during the relevant times, and in furtherance of and for the purpose of executing the scheme and artifice to defraud, the Defendants on thousands of occasions also used and caused to be used, telephone and other wire transmissions including, but not limited to emailing and faxing loan documents such as the HUD-1 Settlement Statements and fraudulent ABA Disclosure forms to the Plaintiff as well as the receipt and dissemination of funds through bank wire transfers in each and every borrower's transaction with the intent and in furtherance of the scheme to defraud.

106.    Specifically, Plaintiff received a telephone call from a Prosperity Mortgage representative prior to his loan closing in which Prosperity Mortgage took Plaintiff's loan application purportedly for a loan from Prosperity Mortgage as the lender. Other Prosperity Mortgage transactions funded by Wells Fargo used a similar telephone loan application process.

107.   Moreover, even though Prosperity Mortgage is listed as the lender and Wells Fargo Bank does not appear on Plaintiff's HUD-1 Settlement Statement, (Wells Fargo Bank funded the loan by interstate wire transfer of money at or prior to closing. Wells Fargo Bank funded each Prosperity Mortgage loan by interstate wire money transfer in the exact same manner.

108.   Each such use of the telephone and wire transmission in connection with the scheme and artifice to defraud constituted the offense of wire fraud as proscribed and prohibited by 18 U.S.C. § 1343.

109.   Upon information and belief, Defendants' enterprise, Prosperity Mortgage, has operated continuously from 1993 to the present and affected thousands of borrowers' transactions through the use of form documents that intentionally contained false information. The enterprise's use of the U.S. mails and wires interstate on thousands of occasions constitutes a pattern of racketeering activity.

110.   The HUD-1 Settlement Statements, disclosures, and the other documents and communications as described in more detail above (which contained fraudulent and false statements made to Plaintiff and which concealed material facts) were intended to and did assure the Plaintiff that his mortgage loans were proceeding legitimately and legally, and influenced the Plaintiff to accept the process, as well as the overcharges built into the co-conspirators' fees, without question. Plaintiff did not learn from these documents and communications that Prosperity Mortgage was a sham entity and that it was operating in violation of RESPA, RICO and Maryland law.

111.   If Plaintiff had then suspected that Prosperity Mortgage was a sham entity and merely being used to facilitate and launder the payment of illegal referral fees and kickbacks, at

his expense, he would have refused to conduct business with Prosperity Mortgage, would have refused to sign loan documents and collateral with a false party as lender, would not have paid the fees, would not have allowed false collateral to be filed with the county land records, and would have sought to secure his rights under the law at that time.  Neither Plaintiff nor, upon information and belief, any other similarly situated borrower, refused to pay the fees, however, because of their reasonable reliance upon the deceptive documents and wires provided to them and others by Conspirators in connection with their transactions. Plaintiff's reasonable reliance on the mortgage documents, collateral, disclosures, correspondence, communications and the apparent legitimacy of the sham entity enabled the scheme to continue, and thus was one proximate cause of the damages suffered by Plaintiff.

112.   Plaintiff's injuries to his property were caused by Defendants' continuous operation of the enterprise through the reinvestment of illicit funds from the enterprise back into the enterprise in that the enterprise would not have been able to continue operating had it not been for the enterprise's prior racketeering activities, and by Defendants falsification of loan documents, collateral, and land records.

113.   Plaintiff's injuries to his property were also caused by the pattern of racketeering activity of the enterprise, Prosperity Mortgage, in that Plaintiff was overcharged for services, charged excessive interest rates, and provided predatory loans, the profits of which were then split between the enterprise's members according to a prior written contract.

## VII. CAUSES OF ACTION

### COUNT I – VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT, 12 U.S.C. §2607
### (All Defendants)

114.    Plaintiff realleges and incorporates by reference the allegations set out in Paragraphs 1 through 113, and further alleges:

115.    At all times relevant, the Defendants procured and/or provided closing or settlement services in respect of residential mortgage loans, including "federally related mortgage loans" as that phrase is defined by RESPA at 12 U.S.C. § 2602(l) and at 24 C.F.R. § 3500.2(3), to the Plaintiff and other borrowers. Upon information and belief, the Defendants procured mortgage loans and/or provided closing or settlement services for more than 100 mortgage loans in each of the last seven years.

116.    At all times relevant, Defendants contracted with the Plaintiff and other borrowers and, as such provided to the Plaintiffs and other borrowers real estate "settlement services" as that phrase is defined by RESPA at 12 U.S.C. § 2602(3) and 24 C.F.R. § 3500.2(16).

117.    Based upon the foregoing facts, the Defendants each violated RESPA with respect to Plaintiff by giving, paying or receiving fees, kickbacks or other things of value to or from the sham and bogus entity, Prosperity Mortgage, pursuant to agreements or understandings that business incident to or as part of a real estate settlement or closing services involving "federally related mortgage loans" would be referred from Long & Foster to Wells Fargo.

118.    The payments to Long & Foster constituted a violation of § 8(a) of RESPA, 12 U.S.C. §2607(a), which prohibits the payment of referral fees or kickbacks in connection with the origination of federally-related mortgage loans.

119.   The payments to Long & Foster also constituted a violation of § 8(b) of RESPA, 12 U.S.C. §2607(b), which prohibits the splitting of fees in connection with the origination of federally-related mortgage loans.

WHEREFORE, Plaintiff requests that the Court:

A.   Pursuant to 12 U.S.C. § 2607(d)(2), award Plaintiff an amount equal to three times the amount of any and all payments to the ABA in respect of each mortgage loan, as well as any and all other amounts or damages allowed to be recovered by RESPA;

B.   Award pre-judgment interest;

C.   Award Plaintiff's reasonable costs and attorneys' fees; and

D.   Award Plaintiff such other and further relief as the Court deems just and proper.

## COUNT II – VIOLATION OF RICO – 18 U.S.C. § 1962(a)
### (All Defendants)

120.   Plaintiff realleges and incorporates by reference the allegations set out in Paragraphs 1 through 119, and further alleges:

121.   Plaintiff is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

122.   Each Defendant and conspirator (Prosperity Mortgage, Long & Foster, Wells Fargo, Wells Fargo Ventures, Walker Jackson, Wesley Foster, Bradley Rozansky, Paragon Title, Randall Rothstein) is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 18 U.S.C. 1962(a);

123.   Prosperity Mortgage constitutes an "enterprise" within the meaning of 18 U.S.C. § § 1961(4) and 1962(a), which enterprise was engaged in, and the activities of which affect, interstate commerce.

124.   Each of the conspirators used proceeds derived from a pattern of racketeering activity under 18 U.S.C. §§ 1961(1) and (5) to operate the enterprise, Prosperity Mortgage.

125.   These unlawful activities included multiple instances of mail and wire fraud, including but not limited to the issuance of false and deceptive HUD-1 Settlement Statements and other mortgage documents, fraudulent ABA disclosure forms, emailed loan documents, fraudulent and false correspondence and communications, and bank-wired monies in violation of 18 U.S.C. §§ 1341 and 1343, which occurred uniformly and consistently during the existence of the "enterprise" and permitted Defendants to maintain and operate it.

126.   The purpose of the enterprise created by the Defendants was to establish an entity through which Wells Fargo could launder illegal referral payments and kickbacks to Long & Foster, to reward it, at the expense of the borrower, for having referred business to Wells Fargo.

127.   Through the use of this illegal and fraudulent scheme, and through its efforts to operate and maintain the enterprise described herein and to maintain the conspiracy to facilitate the payment of illegal referral fees and kickbacks to Long & Foster, the Conspirators have been able both to maintain the enterprise, and to launder illegal payments to Long & Foster through the sham entity, Prosperity Mortgage, in violation of both Federal and State law.

128.   Plaintiff has been injured in his property by reason of operation of the "enterprise" because, *inter alia*, the enterprise would not have been able to continue in operation but for the racketeering activities of the Defendants which fund its ongoing operations.

WHEREFORE, Plaintiff requests that the Court:

A.     Pursuant to RICO, award Plaintiff an amount equal to three times the amount of any and all damages suffered as a result of the illegal acts set forth herein, as well as any and all

other amounts or damages allowed to be recovered by RICO;

    B.    Award pre-judgment interest;

    C.    Award Plaintiff's reasonable costs and attorneys' fees; and

    D.    Award Plaintiff such other and further relief as the Court deems just and proper.

### COUNT III – VIOLATION OF RICO – 18 U.S.C. 1962(a)
(Association-in-fact, All Defendants)

129.    Plaintiff realleges and incorporates by reference the allegations set out in Paragraphs 1 through 128, and further alleges:

130.    Plaintiff is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

131.    Each Defendant and conspirator is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(a).

132.    Alternatively, through the agreements between Prosperity Mortgage, Long & Foster, Wells Fargo, Wells Fargo Ventures, Walker Jackson, Wesley Foster, Bradley Rozansky, Paragon Title, Randall Rothstein, through contractual arrangement and joint management activity between the conspirators, the Defendants formed an association-in-fact with each other, which constitutes an "enterprise" engaged in illegal activities affecting interstate commerce pursuant to 18 U.S.C. §§ 1961(4) and 1962(a).

133.    Each of the conspirators used proceeds derived from a pattern of racketeering activity under 18 U.S.C. §§ 1961(1) and (5) to operate the enterprise.

134.    The purpose of the Defendants' and Conspirators' association-in-fact was to enable them to fund a kickback or referral fee scheme.

135.    These unlawful activities included multiple instances of mail and wire fraud, including but not limited to the issuance of false and deceptive HUD-1 Settlement Statements, fraudulent ABA disclosure forms and other mortgage documents, emailed loan documents, false

and fraudulent correspondence and communications, and bank wired monies in violation of 18 U.S.C. §§ 1341 and 1343, which occurred uniformly and consistently during the existence of the "enterprise" and permitted Defendants to maintain and operate it.

136.   The association-in-fact had a common or shared purpose, that is to give effect to the "kickback" and "referral fee" scheme described above, and had a distinct division of labor. It continued as a unit, with a core membership, over a substantial period of time, exceeding 14 years, and was an ongoing organization established for an economic motive. The association in-fact remained viable and active at the time this action was filed.

137.   Defendants each played a substantial and distinct role in the scheme.

138.   In this association-in-fact, Long & Foster or Long & Foster's agents made the initial contact with the borrower, often through its services as a real estate broker. Long & Foster falsely and intentionally misrepresented to its customers that Prosperity Mortgage was a real and *bona fide* entity that was in the business of lending its own money. Long & Foster never disclosed its business relationship with Wells Fargo, or at a minimum, never disclosed that Prosperity Mortgage was a sham ABA that existed solely to facilitate and launder illegal referral fees and kickbacks.

139.   Long & Foster then referred business to co-conspirator Wells Fargo Bank in return for which Long & Foster was to receive a referral fee or kickback from Wells Fargo Bank.

140.   Long & Foster and Wells Fargo Bank also participated in the scheme to defraud by falsely and deceptively advising the borrower that Prosperity Mortgage was a real and viable entity that would receive a fee in connection with the mortgage loan for performing services in respect of the real estate transaction. At all times, however, Long & Foster and

Wells Fargo knew that Prosperity Mortgage was a sham entity that performed virtually no work in respect of the loan despite the fact that it received a substantial fee.

141.   Long & Foster and Wells Fargo also actively participated in the scheme to defraud by accepting payment of the fees attributable to Prosperity Mortgage, supplying loaned employees to Prosperity Mortgage, providing office space and supplies and managing the affairs of Prosperity Mortgage using Long & Foster and/or Wells Fargo employees and resources. To this end, each Prosperity Mortgage "employee" had both a Prosperity Mortgage and a Wells Fargo e-mail address.

142.   Long & Foster and/or Wells Fargo also actively participated in the scheme to defraud by negotiating the terms of its various agreement(s) with their co-conspirators. The improper use of these agreements permitted Long & Foster and Wells Fargo to require borrowers to unwittingly pay unearned and illegal fees in respect of mortgage loan transactions.

143.   Wells Fargo utilized this scheme to generate a large volume of referrals from Long & Foster. To further the scheme, co-conspirators issued false and deceptive disclosures and caused to be issued false and deceptive HUD-1 Settlement Statements and title insurance policies, which concealed from the Plaintiffs material facts and which were intended to and did mislead the public about the true nature of the scheme to defraud and the true costs and fees resulting from the transaction.

144.   Plaintiff like similar borrowers received a HUD- 1 Settlement Statement and various disclosures through the U.S. mails and/or electronic mail that contained fraudulent and false statements and which concealed material facts that caused Plaintiff and other borrowers to act in reasonable reliance on these deceptive documents that the bogus entity was providing actual settlement services with respect to the mortgage loan for legal and legitimate fees.

32

145.   Prosperity Mortgage's role in this scheme was to launder the funds paid by the borrowers for certain services, including but not limited to application, underwriting and processing fees. Although the HUD-1 Settlement Statements each represented that Prosperity Mortgage was paid ostensibly valid fees for such services, the fees payable to Prosperity Mortgage, as reflected on each HUD-1 Settlement Statement, were in fact (and unknown to the borrower) split between Long & Foster and Wells Fargo. Plaintiff relied upon the representations by the conspirators that Prosperity Mortgage was an entity performing true and valid services for the borrower and, further, that the fees payable to Prosperity Mortgage were legal and legitimate.

146.   All of these activities of the association-in-fact form a pattern, continuous in nature, which consists of numerous unlawful individual acts directed to the Plaintiff and similar borrowers. Defendants' illegal activities persisted over an extended period of time, beginning with the establishment of Prosperity Mortgage in or about 1993. Each fraudulent HUD-1 Settlement Statement, as well as the other false and misleading loan documents and mailed correspondence were provided to the borrower in furtherance of the conspiracy for which the Defendants are liable. The reliance of the Plaintiff like other borrowers on the material omissions in the documents and the falsehoods contained in such documents and other communications was reasonable and justified because such documents and communications would and did cause persons of ordinary experience to be convinced of the legality and legitimacy of Prosperity Mortgage.

147.   These activities of the Conspirators entailed multiple instances of mail fraud consisting of intentional mail fraud intended to induce, and inducing, Plaintiff to part with

property and/or to surrender legal rights in violation of 18 U.S.C. § 1341.

148.    These activities of the Conspirators also entailed multiple instances of wire fraud consisting of intentional wire fraud intended to induce, and inducing, Plaintiff to part with property and/or to surrender legal rights in violation of 18 U.S.C. § 1343.

149.    Through the use of this illegal and fraudulent scheme, and through its efforts to operate and maintain the enterprise described herein, to maintain the conspiracy and to facilitate the payment of illegal referral fees and kickbacks to Long & Foster by laundering funds through the sham entity Prosperity Mortgage, the Conspirators have been able to retain money which is rightfully payable to Plaintiff like other borrowers, and to collect money not properly due from Plaintiff and other borrowers.

150.    The Conspirators retained these illegally gained funds and reinvested and used those funds in their operations in violation of 18 U.S.C. § 1962(a).

49.    Plaintiff like other borrowers has been injured in his property by reason of the operation of the enterprise in this unlawful manner and investment of illicit proceeds from racketeering activities in the enterprise and reinvestment of illicit proceeds from Prosperity Mortgage's operations.

WHEREFORE, Plaintiff requests that the Court:

A.    Pursuant to RICO, award Plaintiff an amount equal to three times the amount of any and all damages suffered as a result of the illegal acts set forth herein, as well as any and all other amounts or damages allowed to be recovered by RICO;

B.    Award pre-judgment interest;

C.    Award Plaintiffs reasonable costs and attorneys' fees; and

D.    Award Plaintiffs such other and further relief as the Court deems just and proper.

## COUNT IV-- VIOLATION OF RICO - 18 U.S.C. § 1962(c)
(All Defendants except Prosperity Mortgage)

151.   Plaintiff realleges and incorporates by reference the allegations set out in Paragraphs 1 through 150, as well as the allegations in Counts II and III, and further alleges:

152.   Plaintiff is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

153.   Defendants Long & Foster, Wells Fargo, Walker Jackson, Wesley Foster, Bradley Rozansky, Paragon Title, Randall Rothstein, and Prosperity Mortgage are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1962 (c).

154.   Prosperity Mortgage constitutes an "enterprise" within the meaning of 18 U.S.C. § § 1961(4) and 1962(c), which enterprise was engaged in, and the activities of which affect, interstate commerce.

155.   Defendants were associated with the enterprise through their joint ownership in the enterprise, and its fraudulent and inflated charges for application fees, processing fees, underwriting fees, and other charges for settlement services, and participated in its management and operation by directing its affairs and assisting in the sham entity scheme. The Defendants participated, directly and indirectly, in the conduct of the enterprise's affairs through a pattern of unlawful activity under 18 U.S.C. § 1961(i)(b), 1961(5) and 1962(c), to wit:

(a)   Multiple acts of mail fraud, in violation of 18 U.S.C. § 1341;

(b)   Multiple instances of wire fraud in violation of 18 U.S.C. § 1343; and

(c)   Multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314.

156.   Plaintiff suffered injury to his property, within the meaning of 18 U.S.C. § 1964(c), by reason of the violation of 18 U.S.C. § 1962(c).

WHEREFORE, Plaintiff requests that the Court:

A.     Pursuant to RICO, award Plaintiff an amount equal to three times the amount of any and all damages suffered as a result of the illegal acts set forth herein, as well as any and all other amounts or damages allowed to be recovered by RICO;

B.     Award pre-judgment interest;

C.     Award Plaintiff's reasonable costs and attorneys' fees; and

D.     Award Plaintiff such other and further relief as the Court deems just and proper.

### COUNT V --- VIOLATION OF RICO - 18 U.S.C. § 1962(c)
(Association-in-fact, All Defendants)

157.   Plaintiff realleges and incorporates by reference the allegations set out in Paragraphs 1 through 156, as well as the allegations in Counts II and III, and further alleges:

158.   Plaintiff is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

159.   The Defendants are each "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

160.   Alternatively, Long & Foster, Wells Fargo, Wells Fargo Ventures, Walker Jackson, Wesley Foster, Bradley Rozansky, Paragon Title, Randall Rothstein, and Prosperity Mortgage, through contractual arrangement and joint management activity, formed an association-in-fact with each other, which constitutes an "enterprise" engaged in illegal activities affecting interstate commerce pursuant to 18 U.S.C. § § 1961(4) and 1962(a).

161.   Defendants were each associated with the enterprise and participated in its management and operation by directing its affairs and by conducting business with each other

and assisting in the scheme to charge borrowers phony and illegal fees in connection with their mortgage loan closings. The Defendants each participated, directly and indirectly, in the conduct of the enterprise's affairs through a pattern of unlawful activity under 18 U.S.C. § 1961(i)(b), 1961(5) and 1962(c), to wit:

    (a)    Multiple acts of mail fraud, in violation of 18 U.S.C. § 1341;

    (b)    Multiple instances of wire fraud in violation of 18 U.S.C. § 1343; and

    (c)    Multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314.

162.   Plaintiff suffered injury to his or her property, within the meaning of 18 U.S.C. § 1964(c), by reason of the violation of 18 U.S.C. § 1962(c).

WHEREFORE, Plaintiff requests that the Court:

A.    Pursuant to RICO, award Plaintiff an amount equal to three times the amount of any and all damages suffered as a result of the illegal acts set forth herein, as well as any and all other amounts or damages allowed to be recovered by RICO;

B.    Award pre-judgment interest;

C.    Award Plaintiff's reasonable costs and attorneys' fees; and

D.    Award Plaintiff such other and further relief as the Court deems just and proper.

## COUNT VI -- VIOLATION OF RICO - 18 U.S.C. § 1962(d)
### (All Defendants)

163.   Plaintiff realleges and incorporates by reference the allegations set out in Paragraphs 1 through 162, as well as the allegations in Counts II and III, and further alleges:

164.   Plaintiff is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

165. The Conspirators are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(d).

166. Prosperity Mortgage constitutes an "enterprise" within the meaning of 18 U.S.C. § § 1961(4) and 1962(a), which enterprise was engaged in, and the activities of which affect, interstate commerce.

167. The Defendants as co-conspirators were associated with the enterprise described herein, and conspired within the meaning of 18 U.S.C. § 1962(d) to violate §§ 1962(a) and (c).

168. The Defendants as co-conspirators conspired to use or invest income derived from a pattern of unlawful activity under 18 U.S.C. § 1961(1) to operate, maintain control of, and maintain an interest in the enterprise and have done so through a pattern of unlawful activity including under 18 U.S.C. § 1961(1), *inter alia*, multiple instances of mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343.

169. The Defendants as co-conspirators conspired to partake or have their co-conspirators partake in a pattern of racketeering activity, including multiple instances of mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 respectively, and be associated with the enterprise by participating directly or indirectly in the conduct or affairs of the enterprise.

170. Plaintiff has suffered injury to his property within the meaning of 18 U.S.C. § 1964(c) by reason of the commission of overt acts constituting illegal activity in violation of 18 U.S.C. §§ 1961(1), 1962(d).

WHEREFORE, Plaintiff requests that the Court:

A. Pursuant to RICO, award Plaintiff an amount equal to three times the amount of any and all damages suffered as a result of the illegal acts set forth herein, as well as any and all

other amounts or damages allowed to be recovered by RICO;

B.     Award pre-judgment interest;

C.     Award Plaintiff's reasonable costs and attorneys' fees; and

D.     Award Plaintiff such other and further relief as the Court deems just and proper.

## COUNT VII -- VIOLATION OF RICO - 18 U.S.C. § 1962(d)
### (Association-in-Fact, All Defendants)

171.   Plaintiff realleges and incorporates by reference the allegations set out in Paragraphs 1 through 170, as well as the allegations in Counts II and III, and further alleges:

172.   Plaintiff is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

173.   The Conspirators are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(d).

174.   Alternatively, Long & Foster, Wells Fargo, Wells Fargo Ventures, Walker Jackson, Wesley Foster, Bradley Rozansky, Paragon Title, Randall Rothstein, and Prosperity Mortgage, through contractual arrangement and joint management activity, formed an association-in-fact with each other, which constitutes an "enterprise" engaged in illegal activities affecting interstate commerce pursuant to 18 U.S.C. §§ 1961(4) and 1962(a).

175.   The Defendants as co-conspirators were associated with the enterprise described herein, and conspired within the meaning of 18 U.S.C. § 1962(d) to violate § 1962(a) and (c).

176.   The Defendants as co-conspirators conspired to use or invest income derived from a pattern of unlawful activity under 18 U.S.C. § 1961(1) to acquire an interest in, establish and operate the enterprise and have done so through a pattern of unlawful activity including under 18 U.S.C. § 1961(1), *inter alia*, multiple instances of mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343.

177.   The Defendants as co-conspirators conspired to operate, maintain control of, and

maintain an interest in the enterprise and have done so through a pattern of unlawful activity including under 18 U.S.C. § 1961(1), *inter alia*, multiple instances of mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343.

178.   The named Plaintiffs and each Class member have suffered injury to his or her property within the meaning of 18 U.S.C. § 1964(c) by reason of the commission of overt acts constituting illegal activity in violation of 18 U.S.C. §§ 1961(1) and 1962(d).

WHEREFORE, Plaintiff requests that the Court:

A.   Pursuant to RICO, award Plaintiff an amount equal to three times the amount of any and all damages suffered as a result of the illegal acts set forth herein, as well as any and all other amounts or damages allowed to be recovered by RICO;

B.   Award pre-judgment interest;

C.   Award Plaintiff's reasonable costs and attorneys' fees; and

D.   Award Plaintiff such other and further relief as the Court deems just and proper.

## COUNT VIII – VIOLATIONS OF THE
## MARYLAND CONSUMER PROTECTION ACT
### (As to Prosperity Mortgage and Walker Jackson)

179.   Plaintiff realleges and incorporates by reference the allegations set out in Paragraphs 1 through 178, and alleges further:

180.   The mortgage loan transactions set forth herein are governed by the Consumer Protection Act, Md. Com. Law Code Ann. §§ 13-101, *et. seq.*

181.   Section 13-303 of the Commercial Law Article prohibits unfair or deceptive trade practices in the sale of any consumer realty or the extension of consumer credit.

182.   The Consumer Protection Act defines unfair or deceptive trade practices to include, *inter alia*, the following:

     a.      False or misleading oral or written statements that have the capacity, tendency, or effect of deceiving or misleading consumers;

     b.      Failure to state a material fact if the failure deceives or tends to deceive; and

     c.      Deception, fraud, misrepresentation or knowing concealment, suppression or omission of any material fact concerning the sale of consumer realty or the extension of consumer credit, with the intent that the consumer rely on the deception, fraud, misrepresentation or knowing concealment, suppression or omission of the material fact.

183.   The Defendants violated the Act by concealing the arrangement between them and facilitating the receipt of illegal referral fees for Long & Foster from Wells Fargo, at the expense of the consumers, in violation of Maryland law.

184.   The Defendants further violated the Act by inciting, encouraging and aiding and abetting Long & Foster's receipt of funds in connection with mortgage loan transactions when such funds were, in reality, a referral fee or kick-back from Wells Fargo.

185.   Further, Defendants either directly or indirectly conspired to violate the provisions of the Real Estate Settlement Procedures Act as described above 12 U.S.C. § 2607; Reg. X 24 C.F.R. §§ 3500.01 *et seq.*, by requiring that borrowers pay a fee to an affiliated business arrangement that performed little or no substantive work in connection with the mortgage loan.

186.   The failure to comply with the provisions of the various acts governing the Plaintiffs, and the members of the Class they represent, were deceptive and unfair acts within the meaning of the Maryland Consumer Protection Act. Defendants engaged in the suppression and omission of material facts, identified herein, that had the capacity, tendency or effect of

deceiving or misleading the Plaintiff and that did in fact deceive or mislead the Plaintiff, causing Plaintiff injury and loss.

187.    The Defendants' acts and omissions constitute unfair and deceptive trade practices and violate the Maryland Consumer Protection Act.  Plaintiff has been damaged.

WHEREFORE, Plaintiff requests that the Court:

A.    Award Plaintiff damages in an amount equal to the kickbacks or referral fees that were paid by or on his behalf as a consequence of the Defendants' unfair and/or deceptive trade practices;

B.    Award pre-judgment interest;

C.    Award Plaintiff's reasonable costs and attorneys' fees as permitted by Section 13-408 of the Commercial Law Article; and

D.    Award Plaintiff such other and further relief as the Court deems just and proper.

## COUNT IX – FRAUD
### (All Defendants)

188.    Plaintiff realleges and incorporates by reference the allegations set out in Paragraphs 1 through 187, and further alleges:

189.    Defendants, or their employees or agents, intentionally and knowingly made the false and misleading representations and omissions alleged herein, including but not limited to those set forth herein regarding the identity of the real lender, the terms and conditions applicable to Plaintiff's mortgage loans, and the truthfulness of the operative loan documents, collateral, and land records, intending that Plaintiff reasonably rely upon the false and misleading representations and omissions to his detriment, which he did.

190.   As a direct and proximate result of the fraudulent statements, representations and omissions, Plaintiff was induced, *ab initio*, to enter into a mortgage loan and false associated loan documents, as well as false collateral that was filed in the county land records, that included a sham entity as putative lender, and payment to that sham entity that performed no services and supplied no goods in respect of the mortgage loans.

WHEREFORE, Plaintiff requests that the Court:

A.   Award Plaintiffs compensatory damages in an amount to be determined by the jury;

B.   Award punitive damages to be determined by the jury, including, but not limited to, disgorgement of the following:

   i.   The $29,250 commission charged and received by Long & Foster and Bradley Rozansky;

   ii.   The $118,024.87 in mortgage interest charged and received by Wells Fargo;

   iii.   The $1,445.00 in fees charged and received by Prosperity Mortgage, Walker Jackson, Long & Foster and/or Wells Fargo;

   iv.   The $4,832.50 in title and attorney fees charged and received by Paragon Title and Randall Rothstein.

C.   Award pre-judgment interest;

D.   Award Plaintiff's reasonable costs and attorneys' fees; and,

E.   Award Plaintiff such other and further relief as the Court may deem just and proper.

## COUNT X -- CIVIL CONSPIRACY
### (All Defendants)

191.   Plaintiff realleges and incorporates by reference the allegations set out in Paragraphs 1 through 190, and further alleges:

192.   The Defendants conspired with each other by common agreement or understanding, for: (a) the unlawful purpose of depriving the Plaintiff of his rights under the statutory provisions and common law, as alleged herein; and (b) the purpose of unlawfully depriving the Plaintiff of both his money and property.

193.   The Defendants, acting with each other, did unlawfully deprive the Plaintiff of both his money and property and the rights alleged herein by the overt acts alleged herein, all of which were performed to advance the conspiracy.

194.   In furtherance of said conspiracy, the Defendants both individually and in concert committed the overt acts or omissions alleged herein, to the economic loss and injury of the Plaintiff.

195.   The acts and omissions of the Defendants caused injury and loss to the Plaintiff.

WHEREFORE, Plaintiff requests that the Court:

A.   Award Plaintiffs compensatory damages in an amount to be determined by the jury;

B.   Award punitive damages to be determined by the jury, including, but not limited to, disgorgement of the following:

> i.   The $29,250 commission charged and received by Long & Foster and Bradley Rozansky;

> ii.   The $118,024.87 in mortgage interest charged and received by Wells Fargo;

      iii.  The $1,445.00 in fees charged and received by Prosperity Mortgage, Walker Jackson, Long & Foster and/or Wells Fargo;

      iv.  The $4,832.50 in title and attorney fees charged and received by Paragon Title and Randall Rothstein.

C. Award pre-judgment interest;

D. Award Plaintiff's reasonable costs and attorneys' fees; and,

E. Award Plaintiff such other and further relief as the Court may deem just and proper.

## COUNT XI – RESTITUTION/UNJUST ENRICHMENT
### (All Defendants)

196.   Plaintiff realleges and incorporates by reference the allegations set out in Paragraphs 1 through 195, and further alleges:

197.   By paying the Defendants the illegal fees described herein, Plaintiff has conferred a benefit upon the Defendants.

198.   Defendants were each aware that they received this benefit in the form of illegal fees.

199.   Under the circumstances, each of the Defendants' acceptance of these benefits and overcharges is and was unjust and inequitable and the Defendants should not be permitted to retain these benefits and overcharges.

WHEREFORE, Plaintiff requests that the Court:

A.    Award pre-judgment interest;

B.    Award Plaintiff's reasonable costs and attorneys' fees; and,

C.     Grant the Plaintiff such other and further relief, including equitable relief, to which it may be entitled or which the Court may deem necessary, proper or just.

Respectfully submitted,

Dated: July 23, 2010

LUDWIG & ROBINSON, PLLC


By: _____/s/ Robert W. Ludwig, Jr._____
Robert W. Ludwig (# 4800)
LUDWIG & ROBINSON, PLLC
818 Connecticut Avenue, N.W., Suite 750
Washington, DC  20006
(202) 289-1800

Attorneys for Plaintiff


## REQUEST FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

/s/ Robert W. Ludwig, Jr._____
Robert W. Ludwig, Jr.